# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## CASE NO. 24-12593-GG

BRIGETTE I. BODIE-JERNIGAN,
      Appellant,

vs.

SCHOOL BOARD OF
BROWARD COUNTY
FLORIDA,
        Appellee.

_____/

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 22-cv-60745-AH

---

## APPELLANT'S INITIAL BRIEF

Mark J. Berkowitz, P.A.
Attorney for Appellant
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

| | |
|---|---|
| Mark J. Berkowitz | Appellant's Attorney |
| Mark J. Berkowitz, P.A. | Appellant's law firm |
| Brigette Bodie Jernigan | Appellant |
| Hudson Gill | Attorney for the Appellee |
| Johnson, Anselmo | Appellee's law firm |
| School Board of Broward County | Appellee |

# TABLE OF CONTENTS

Certificate of Interested Persons and
Corporate Disclosure Statement                                    -i-

Table of Citations                                                -iii-

Statement of Subject Matter and Appellate                         -vi-
Jurisdiction

Statement of the Issues                                           -vii-

Statement of the Case and Facts                                   1

Summary of the Argument                                           9

ARGUMENT

   A) As a Pleading, the Second Amended Complaint Is        11
      Legally Sufficient, Under the Requisite "Plausibility
      Standard.

   B) The Appellant Has Properly Pled a Cause of Action      15
      Under Count I (Failure to Accommodate)

   C) The Appellant Has Properly Pled a Cause of Action
      Under Count II (Retaliation)

CONCLUSION                                                        23

CERTIFICATE OF COMPLIANCE                                         25

CERTIFICATE OF SERVICE                                            26

# TABLE OF CITATIONS

Page

*Akridge* v. *Alfa Ins. Companies*,
93 F. 4th 1181(11th Cir. 2004).                                      21

*Ashcroft* v. *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937,
173 L.Ed.2d 868 (2009).                                              12

*Bailey* v. *Metro Ambulance Servs., Inc.,*
992 F.3d 1265 (11th Cir. 2021).                                      21

*Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).                              12

*Buchanan* v. *Delta Airlines, Inc.*, 727 F. Appx. 639
(11th Cir. 2018).                                                    11

*Cotton* v. *Cracker Barrel Old Country Store,*
*Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006).                        23

Davis v. Miami Dade County, ,_____F.3d_____,
(September 9, 2024).                                                  15

*Edwards* v. *Prime, Inc.*, 602 F.3d 1276 (11th Cir. 2010).          12

*Fields* v. *Bd. of Trs. of the Ga. Mil. Coll.,*
2024 U.S. Dist. LEXIS 17284 (M.D. Ga. 2024).                         18

*Greene* v. *Bd. of Regents of the Univ. Sys. of*
*Ga.*, 2024 U.S. Dist. LEXIS 132038 (N.D. Ga. 2024).                 18

*Holly* v. *Clairson Industries, LLC,* 17
492 F.3d 1247 (11th Cir. 2007).

*Hopkins* v. *Saint Lucie Cty. School Bd.,* 11
399 F. App'x 563 (11th Cir. 2010).

*Harding* v. *Winn Dixie Stores, Inc.,* 15--16
907 F. Supp. 386 (M.D. Fla. 1995).

*See, Lucas* v. *W.W. Grainger, Inc.,* 257 F.3d 1249
(11th Cir. 2001).

*Owens* v. *Ga.,* 2021 U.S. Dist. LEXIS 182611 18
(N.D. Ga. 2021).

*Lewis* v. *City of Union City,* 934 F.3d 1169 20
(11th Cir. 2019).

*Maynard* v. *Board of Regents,* 342 F.3d 1281 15
(11th Cir. 2003)

*Mazzeo* v. *Color Resolutions Int'l., LLC,* 746 F.3d 1264 11--12
(11th Cir. 2014).

*McDonnell Douglas Corp.* v. *Green,* 17
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Mills* v. *Birmingham Bd. of Education,* 2005 WL 8158200, 4
at 5 (N.D. Ala. July 27, 2005.

*Muldrow* v. *City of St. Louis,* 601 U.S. 346, 17
144 S.Ct. 967, 218 L.Ed.2d 322 (2024).

*Nadler* v. *Harvey,* 2007 U.S. App. LEXIS 20272 (11th Cir. 2007)   16

*Paleologos* v. *Rehab. Consultants, Inc.*, 900 F. Supp. 1460   15
(N.D. Ga. 1998).

*Peifer* v. *Pennsylvania*, 106 F. 4th 270 (3d Cir. 2024).   18

*Smith* v. *Lockheed Martin Corp.,*   15
644 F.3d 1321 (11th Cir. 2011)

*Swierkiewicz* v. *Sorema, N.A.,*   11
534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

*Stewart* v. *Happy Herman's Cheshire Bridge*,   20
117 F.3d 1278 (11th Cir. 1997).

*Wascura* v. *City of South Miami,*   17
257 F.3d 1238 (11th Cir 2001).

*Wingfield* v. *S. Univ. of Florida, Inc.,*   22
2010 U.S. Dist. LEXIS 59132 (M.D. Fla. 2010)

Other Authorities

Fed. R. Civ. P. 8(a)(2).   11

42 U.S.C. Section 12111(8).   5, 9

42 U.S.C. Section 12112(a)   5, 9, 16

2008 Amendments to the ADAAA   9

29 C.F.R. Section 1630.2   9

## <u>STATEMENT OF SPECIFIC SUBJECT MATTER AND APPELLATE JURISDICTION</u>

This is an action to halt and to seek redress for unlawful discrimination, perpetrated by the Appellee, against the Appellant, for the violations of the Americans with Disabilities Act of 1973, 42 U.S.C. Section 12101, *et seq.*, as amended, (ADA"), for the denial of a reasonable accommodation. This is also an action to halt and to seek redress, for the unlawful retaliation, perpetrated by the Appellee, against the Appellant, for pursuing reprisal and or retribution, based on the exercise of protected activity, by the Appellant, in violation of the ADA. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. Section 1331.

A Notice of Appeal was filed on August 12, 2024. The Notice of Appeal was timely filed with the district court.

## STATEMENT OF THE ISSUES

### I.

WHETHER THE DISTRICT COURT APPLIED THE CORRECT LEGAL
STANDARD IN EVALUATING COUNT I (FAILURE TO ACCOMMODATE)
OF THE SECOND AMENDED COMPLAINT FOR AN ALLEGED FAILURE
TO STATE A CLAIM?

### II.

WHETHER THE DISTRICT COURT APPLIED THE CORRECT LEGAL
STANDARD IN EVALUATING COUNT II (RETALIATION) OF THE
SECOND AMENDED COMPLAINT FOR AN ALLEGED FAILURE TO
STATE A CLAIM?

## STATEMENT OF THE CASE AND FACTS

At all material times, herein, as set forth in the Second Amended Complaint, Appellant, Brigette I. Bodie-Jernigan (hereinafter, referred to as, "BODIE-JERNIGAN"), was employed as a school teacher for the Appellee, the School Board of Broward County, Florida (hereinafter, referred as the "SCHOOL BOARD"), at Dillard High School. (hereinafter, referred to, as "DILLARD"). **[R. 2].**[1] BODIE-JERNIGAN suffers from an auto-immune disorder, with additional underlying medical conditions, including renal insufficiency post nephrectomy, s/p cardiac surgery/ASD repair and pre-diabetes, which present severe life-threatening complications,[2] upon her exposure to COVID-19, and or to other harmful airborne pathogens, through the exposure to leaking roofs, in the workplace. **[R. 2].**

---

[1] BODIE-JERNIGAN had been employed as a member of the Appellee's instructional staff since 2007. **[R. 2].**

[2] The Appellant alleged in the Second Amended Complaint that these conditions substantiated her contention that she was a "qualified individual with a disability," under the Americans with Disabilities Act, and the 2009 Amendments thereto. **[R. 2].** Furthermore, the Appellant contended that in addition to COVID-19, the presence of other airborne pathogens in the workplace created a further danger to her, regarding contracting a respiratory infection, which would also have presented a clear and present danger to her continued well-being. **[R. 2].**

Initially, the Appellant's reasonable accommodation request to work remotely, was granted by the SCHOOL BOARD, from October, 2020, to January 8, 2021. **[R. 2].** However, on January 5, 2021, BODIE-JERNIGAN received notification from the SCHOOL BOARD Administration, that her remote work assignment, which had been previously granted, would expire on January 8, 2021; and consequently, the Appellant would be required to report for work in person, on January 11, 2021. **[R. 2].**

Pursuant to a memorandum of understanding between the SCHOOL BOARD, and the Appellant's collective bargaining representative, the Broward Teachers' Union (hereinafter, referred to as, "BTU"), which was also confirmed by Arbitrator Roger Abrams, in an Arbitration Opinion and Award, instructional staff members would be allowed to continue to work remotely, or from home, based on certain objective criteria, such as the presence of an underlying medical condition, which would place the instructional staff member, at a higher risk of contracting COVID-19. **[R. 2].**

Specifically, Paragraph 13 of the applicable Memorandum of Understanding stated as follows:

The District will strive to provide the choice of a remote work assignment to the highest possible number of requesting employees. Eligibility for a work from home remote extended assignment is based on the function of the job and the needs of the worksite. The employee must be able to perform the essential functions of the employee's job and the needs of the worksite. The employee must be able to perform the essential functions of the employee's job through digital platforms without commuting to the office, and or a centralized location. This determination will be made by a district review panel with consultation of a medical expert when appropriate and shall not be made in an arbitrary or capricious manner.

The employee's direct supervisor will provide the review panel with all requested information regarding the operational needs and capacity of the school/department. To the extent that the operational needs and capacity of the school department are not able to accommodate all requests for remote work, the requests will be prioritized as follows:

1. Consideration will be given to qualified employees who have an underlying medical condition that presents the strongest and most consistent evidence of the likelihood of a severe case involving COVID-19, which placed them at a higher risk for serious complications if they contract COVID-19 as supported by a letter from a medical professional. . . **[R. 2]**.

Arbitrator Abrams confirmed the applicability of the Memorandum of Understanding in his Arbitration Opinion and Award, mandating that the SCHOOL BOARD grant the remote work accommodation, based upon non-arbitrary and non-capricious criteria. **[R. 2]**. Despite the approved application of these objective criteria by the Arbitrator, DILLARD's Principal, Cassandra Robinson, failed and or refused to meet with the Appellant, to discuss her

reasonable accommodation options,[3] consistent with the Memorandum of Understanding, and BODIE-JERNIGAN was ordered to report for in-person work, on January 11, 2021. **[R. 2].** The Appellant further alleged that teachers with lesser respiratory impairments, were allowed to continue to work remotely, however, as an employee with a severe auto-immune disorder, she was ordered to return to on-site work, without any consideration of her disability and her underlying conditions. **[R. 2].**[4]

The Appellant was at an extremely high-risk, to subsequently sustain a serious illness, based on reporting for on work, due to exposure to COVID-19. **[R. 2].** Given the nature of the Appellant's auto-immune disorder, along

---

[3] The Second Amended Complaint also alleged that the Appellee failed to engage in the legally required "interactive process" with BODIE JERNIGAN. **[R. 2].** Furthermore, although the Appellee operates a "virtual school," whereby the instructors appear remotely, there is no evidence in the record that the Appellant was considered to fill a possible role in the "Virtual School." **[R. 2].**

[4] Contrary to the district court's citation of *Mills* v. *Birmingham Bd. of Education,* 2005 WL 8158200, at 5 (N.D. Ala. July 27, 2005), the Appellee admitted, through the issuance of the Memorandum of Understanding, as outlined in the Second Amended Complaint, that employees in the Appellant's job classification could indeed perform the essential functions of her job remotely.

with the presence of her other associated medical conditions, the Appellant maintained that she had no other alternative, upon the denial of the requested reasonable accommodation, but to take an unpaid leave of absence, based on the presence of her disability, since she could not be placed at a serious risk of injury, or death, by reporting for on-site work, at DILLARD, thereby being exposed to an increased incidence of COVID-19. [R. 2]. The Appellant further contended that as a result of the SCHOOL BOARD's denial of the reasonable accommodation, to allow her to continue to work remotely, she had no other alternative, given the danger presented by in-person work, based on her status as "a qualified individual with a disability," but to remain on an extended leave of absence without pay, until August of 2022,[5] which marked the beginning of the following school year, for 2022—2023. [R. 2].

The district court held that the Second Amended Complaint failed to state a cause of action under a substantive disability theory, under the

---

[5] The possible incidence and or airborne severity of COVID-19 had presumably decreased over time; and given the presence of her disabilities, the Appellant could not safely return to the workplace until August of 2022. [R. 2].

Americans with Disabilities Act, and the 2009 amendments thereto. (Count I). **[R. 3]**. Similarly, the district court held that the Second Amended Complaint failed to state a cause of action for retaliation, under the Americans with Disabilities Act, and the 2009 amendments thereto. **[R. 3]**.

With respect to Count I, the Second Amended Complaint clearly stated that the Appellant was capable of performing the essential functions of a school instructor, on a remote basis, such as: the use of assessment strategies which are aligned with the curriculum and standards, to assist in the continued development of the learner; (ii) the use of appropriate techniques and strategies which promote and enhance critical, creative and evaluate thinking capabilities of students; (iii) the use of appropriate instructional strategies and materials that reflect each student's culture, leaning styles, special needs and socio-economic backgrounds; (iv) the use of an understanding of learning and human development to provide a positive learning  environment which supports the intellectual, personal and social development of the students; (v) demonstrate knowledge of the subject matter which is required to be communicated to the students; (vi) the establishment of a classroom management system that maintains discipline

and created a positive learning environment, in which students are actively engaged in learning, educational interaction, cooperative learning and self-motivation; and (vii) the Plaintiff is fully capable of performing these essential functions through the operation of a digital platform, remotely and or from her home. **[R. 2].**[6] The district court held that stating that the Appellant could perform these essential functions remotely, was not sufficient to survive a motion to dismiss **[R. 2];** but perhaps more importantly, the district court reached the merits of the claim, by stating that in-person work, standing alone, was an essential function of the classroom teacher position; and hence, apparently, under no set of facts could the Appellant state a claim under a theory of substantive disability, under Count I. **[R. 2].**

Similarly, with regard to Count II of the Second Amended Complaint, the district court apparently relies on substantive law, apparently stating that being compelled to take an unpaid leave of absence is not an adverse employment action; and on this basis, the district court held that the

---

[6] This detailed description of the various applicable job functions is not at all, "conclusory," but rather, this list of job functions clearly describes the job duties which the Appellant could perform on a remote basis.

retaliation claim failed. **[R. 2].** In short, by concluding that the denial of a reasonable accommodation, to work from home, does not result in an adverse employment action, the district court dismissed Count II, apparently holding, under no set of facts could the Appellant possibly support or plead the existence of an adverse employment action in this case.

A timely Notice of Appeal was filed on August 12, 2024. **[R. 3].**

## SUMMARY OF THE ARGUMENT

Both Count I (Failure to Accommodate) and Count II (Retaliation) of the Second Amended Complaint set forth valid causes of action under the Americans with Disabilities Act. Not only does the pleading articulate the elements of each cause of action, additionally, the Appellant has set forth plausible facts, when taken together, clearly establish that she was protected by the applicable statutes,[7] and she was subjected to intentional discrimination because of her protected characteristics. Given the totality of these well-pleaded facts, the Second Amended Complaint indeed should survive a motion to dismiss under the applicable plausibility standard.

The Appellant is a "qualified individual with a disability,"[8] and the Appellee specifically recognized that classroom instructors could perform the essential functions of their jobs by working remotely. Moreover, following the denial of her requested reasonable accommodation to continue her remote work assignment, until the incidence of COVID 19 abated, the Appellant

---

[7] *See*, the ADA, 42 U.S.C. Section 12112 (a); *see also*, 29 C.F.R. Section 1630.2; as well as the 2008 amendments to the ADAAA.

[8] *See*, the ADA, 42 U.S.C. Section 12111(8).

maintained that she had no other alternative, upon the denial of the requested reasonable accommodation, but to take an unpaid leave of absence, based on the presence of her disability, since she could not be placed at a serious risk of injury, or death, by reporting for on-site work. Therefore, in all of the circumstances, the Appellant was indeed subjected to an adverse employment action by the Appellee. The Appellant was treated differently for no justifiable reason, since other disabled employees were allowed to continue with remote work, during the height of the pandemic.

## ARGUMENT

### A) AS A PLEADING, THE SECOND AMENDED COMPLAINT IS INDEED LEGALLY SUFFICIENT, UNDER THE REQUISITE "PLAUSIBILITY STANDARD."

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss. *Swierkiewicz* v. *Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997—98, 152 L.Ed.2d 1 (2002). To successfully state a claim of employment discrimination under the ADA, a complaint must "provide enough factual matter to plausibly suggest (the existence of) intentional discrimination." *Buchanan* v. *Delta Airlines, Inc.*, 727 F. Appx. 639, 641 (11th Cir. 2018); *see also, Hopkins* v. *Saint Lucie Cty. School Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010).[9]

---

[9] To set forth a cause of action under the ADA, a plaintiff must show that, at the time of the adverse employment action, he or she had a disability, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability. *Mazzeo* v. *Color Resolutions Int'l.,*

The Appellant contends that the district court imposed a heightened pleading standard on her complaint that was inconsistent with Supreme Court precedent in *Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft* v. *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also, Edwards* v. *Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).

In *Twombly*, the Supreme Court addressed the previously accepted standard governing "a complaint's survival," and rejected that standard in favor of a plausibility standard. 127 S.Ct. at 1969; *see also, Iqbal,* 129 S.Ct. at 1953 (using the *Twombly* standard to analyze the complaint at issue and validating that standard as "the pleading standard for all civil actions.") The applicable standard states that to survive a motion to dismiss, a plaintiff must file a complaint containing fact allegations that are plausible on their face: a claim has "facial plausibility when the plaintiff pleads factual content that

---

*LLC,* 746 F.3d 1264, 1268 (11th Cir. 2014). A plaintiff need not plead elements of each offense, but merely set forth plausible facts, when taken together, establish that he or she was protected by the applicable statutes, and that he or she was subjected to intentional discrimination because of the protected characteristics. *See, Williams* v. *Wal-Mart Stores E., LP,* 2019 U.S. Dist. LEXIS 105682 (M.D. Ala. 2019).

allows the court to draw the reasonable inference" that defendant is liable for the conduct alleged. *Iqbal,* 129 S.Ct. at 1949.

The Supreme Court has further identified "two working principles," for a district court to use in applying the facial plausibility standard; first, in evaluating motions to dismiss, the court must assume the veracity of well pleaded factual allegations; however, the court does not have to accept as true, legal conclusions when they are couched as factual allegations." *Iqbal,* 129 S.Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Application of the facial plausibility standard involves two steps.

Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well pleaded facts. That task is actually content specific and to survive the motion to dismiss, the allegations must permit the court, based on its judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.*

In the instant case, the Appellant presented a mosaic of facts which pointed to a clear plausibility, supporting a right to relief. The Second Amended Complaint contained "sufficient factual matter," to support a reasonable inference that the Appellee had engaged in disability discrimination, based upon the denial of the reasonable accommodation; and the temporary separation of the Appellant from the workplace until the incidence and or severity of COVID-19, as an airborne threat had abated. [**R. 2**].

In other words, the Appellant had alleged that her initial request for remote work as a school teacher had been approved; in its denial of the continued accommodation for the Appellant, the Appellee had acted in an arbitrary and capricious manner, in that other school teachers had been granted the opportunity to continue with remote work, based upon their disabilities and the adverse effects of being exposed to COVID 19 in the workplace; and perhaps most importantly, the Appellant's request for a reasonable accommodation, to be allowed to continue to work remotely, was summarily denied, without the application of a mandated and legally required interactive process. [**R. 2**]. Given the totality of these well-pleaded facts, the

Second Amended Complaint indeed should survive a motion to dismiss under the applicable plausibility standard. *See, Maynard* v. *Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).[10]

## B) THE APPELLANT HAS PROPERLY PLED A CAUSE OF ACTION UNDER COUNT I (FAILURE TO ACCOMMODATE).

The Americans with Disabilities Act was "designed to prohibit discrimination[11] against disabled persons and to enable those persons 'to compete in the workplace and the job market based on the same performance standards and requirements expected of those persons who are not disabled.'" *Paleologos* v. *Rehab. Consultants, Inc.*, 900 F. Supp. 1460, 1464 (N.D. Ga. 1998). (quoting *Harding* v. *Winn Dixie Stores, Inc.*, 907

---

[10] *See, Smith* v. *Lockheed Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011); see also, the recent unpublished decision of the Eleventh Circuit in *Davis* v. *Miami Dade County*,____F.3d____ (September 9, 2024).

[11] The definition of "discriminate" includes a failure to make reasonable accommodations to the limitations of that individual with a disability. *See*, 42 U.S.C. Section 12112(b)(5)(A). ("the term 'discriminate against a qualified individual on the basis of a disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.").

F. Supp. 386, 389 (M.D. Fla. 1995)). Title I of the ADA prohibits covered employers from discriminating "against a qualified individual on the basis of a disability in regard to job application procedures, the hiring advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. Section 12112(a); *see also, Wascura* v. *City of South Miami*, 257 F.3d 1238, 1242 (11th Cir 2001).

Therefore, a plaintiff asserting a claim of disability discrimination under the ADA, can set forth a failure to accommodate claim. *See, Holly* v. *Clairson Industries, LLC*, 492 F.3d 1247, 1261-1262 (11th Cir. 2007). ("an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA," and a plaintiff is not required to show additional disparate treatment when alleging discrimination based on a failure to accommodate a disability.) *See, Nadler* v. *Harvey,* 2007 U.S. App. LEXIS 20272 (11th Cir. 2007) ("An employer must reasonably accommodate an otherwise qualified individual with a known disability, unless the accommodation would impose an undue hardship in the operation of the

business . . . Thus, applying *McDonnell Douglas*[12] to reasonable accommodation cases would be superfluous since there is no need to prove discriminatory motivation.") *See also, Holly,* 492 F.3d at 1262 (in an ADA failure to accommodate case, the defendant need not show that it had legitimate nondiscriminatory reason for terminating the plaintiff, or that the plaintiff needed to establish that the employer's proffered reasons were pretextual.)

To establish a reasonable accommodation claim,[13] a plaintiff must demonstrate that; (1) he or she was disabled; (2) he or she was a "qualified individual" and (3) that he or she was discriminated against because of a disability, by being denied a reasonable accommodation,[14] to allow the

---

[12] *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[13] Contrary to the district court's analysis, the Appellant clearly stated in the Second Amended Complaint that she could indeed perform the essential functions of her position as a schoolteacher, remotely. In short, the Appellant could indeed perform essential teaching functions on a remote basis. **[R. 2].**

[14] Moreover, the Supreme Court in *Muldrow* v. *City of St. Louis,* 601 U.S. 346, 144 S.Ct. 967, 218 L.Ed.2d 322 (2024). recently overturned the adverse employment action standard for substantive discrimination in Title VII cases, requiring plaintiffs to show that they only suffered "some" injury. In light of this

plaintiff to continue working.[15] *See, Lucas* v. *W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). When an employee requests a reasonable accommodation, it may be necessary for the employer and the employee to engage in a dialogue or an interactive process to determine the feasibility of an interactive process. *See, Owens* v. *Ga.*, 2021 U.S. Dist. LEXIS 182611 (N.D. Ga. 2021).

---

recent ruling, other circuit courts have remanded discrimination claims in other contexts, for further review under the *Muldrow* standard. *See, Peifer* v. *Pennsylvania*, 106 F. 4th 270 (3d Cir. 2024).

[15] The district court erroneously opines that the requested accommodation cannot be said to have been "reasonable," since on site work, in the district court's estimation, was an essential function of the teaching position. This conclusion is erroneous for two reasons. First, other disabled instructors were permitted to continue to work remotely, subsequent to January 11, 2021. **[R. 2].** Therefore, it is difficult to fathom how the School District Administration could take the position that on site work was indeed an essential function of the job. Second, courts within the Eleventh Circuit have indeed recognized remote work as an accommodation for school instructors, and at the very least, whether in person work is an essential function of the job, is a question of fact. *See, Greene* v. *Bd. of Regents of the Univ. Sys. of Ga.*, 2024 U.S. Dist. LEXIS 132038 (N.D. Ga. 2024). In addition, it has been held that a transfer to an institution, which provides online teaching is reasonable. *See, Fields* v. *Bd. of Trs. of the Ga. Mil. Coll.*, 2024 U.S. Dist. LEXIS 17284 (M.D. Ga. 2024). The Appellee operated a "Virtual Teaching School," but apparently, no consideration was given to the Appellant to reassign her to this division of the Appellee.

As previously stated above, the ADA expressly states that an employer unlawfully discriminates against a qualified individual with a disability, when the employer fails to make reasonable accommodations for the employee, unless "the accommodation would impose an undue hardship" on the employer. *See*, 42 U.S.C. Section 1212(b)(5)(A). Count I of the Second Amended Complaint set forth a viable claim of disability discrimination under the ADA, since the Plaintiff established a factual basis for her disability, through an adequate description of her condition; she further alleged that she was a qualified individual with a disability; she also alleged that she needed an accommodation; that she could perform the essential functions of her position with an accommodation; and that the requested accommodation was denied, without the showing of an undue burden on the employer. **[R. 2].**[16]

---

[16] Although the lack of an accommodation claim does not need to establish *animus* by the employer, there is certainly a strong inference in this case, indicating that the Appellee harbored *animus* against BODIE-JERNIGAN. Although other disabled employees, in the Appellant's job classification, were indeed accommodated with remote work, pursuant to an Arbitrator's enforcement of a memorandum of understanding, the Appellant was completely ignored by the School District Administration, in assessing her workplace needs; and there was no interactive process. **[R. 2]**

## C) THE APPELLANT HAS PROPERLY PLED A CAUSE OF ACTION UNDER COUNT II (RETALIATION).

The ADA prohibits employers from retaliating against employees who oppose unlawful employment practices. *See*, 42 U.S.C. Section 12203 (a). ADA retaliation claims are evaluated under the *McDonnell Douglas* burden shifting framework, as well as under the convincing mosaic standard. *See*, *Stewart* v. *Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997). "To establish a prima facie case of retaliation [under McDonnell Douglas], a plaintiff must show: (a) statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Id.* When a plaintiff makes out a prima facie case, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for its actions. *Id.* If the employer carries the burden of persuasion, the plaintiff must then show that the proffered reason is a pretext for retaliation. *Id.*

---

In addition, a "plaintiff will always survive summary judgment if he presents . . . a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *See*, *Lewis* v. *City of Union City,* 934 F.3d 1169, 1185 (11th Cir. 2019). "A plaintiff's mosaic may be made up of, among other things, (1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Akridge* v. *Alfa Ins. Companies*, 93 F. 4th 1181, 1198 (11th Cir. 2004). Under either standard, a plaintiff must establish "but for" causation for the retaliation claim. *See*, *Bailey* v. *Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1274 (11th Cir. 2021).

In the instant case, the Appellant clearly alleged that she engaged in statutorily protected expression, by requesting a reasonable accommodation; she alleged that she suffered an adverse employment action; and further, she alleged that there was indeed a causal connection, between the protected expression and the adverse employment action. **[R. 2]**. The district court erroneously held that the Appellant failed to state an or to properly articulate the presence of an adverse action, since in its analysis,

the district court held that by being relegated to an unpaid leave of absence, the Appellant was not subjected to an adverse action. **[R. 3].**

Contrary to the district court's analysis, the taking of an unpaid leave of absence by the Appellant, following the denial of her reasonable accommodation, *was not motivated by a free and voluntary choice*, certainly, returning to work on site, which contained a high incidence of COVID-19, and leaking roof, spawning harmful airborne pathogens, would have presented a clear and present danger to BODIE-JERNIGAN's continued existence and well-being. **[R. 2].** Requiring an employee to take leave without pay, and again, here, there was no meaningful and or voluntary choice here, can indeed be considered, to constitute, an *adverse employment* action. The wrongful denial of the reasonable accommodation was directly caused by the employer, and this action, resulted in the Appellant, being relegated to an unpaid status, and this in effect, coerced status, directly impacted the employee's compensation. *See*, *Wingfield* v. *S. Univ. of Florida, Inc.*, 2010 U.S. Dist. LEXIS 59132 (M.D. Fla. 2010).[17]

---

[17] *Id*, at Footnote 93. Again, although the district court claimed that the Appellant made the "choice" to go on an unpaid leave, however, as a

## CONCLUSION

The Second Amended Complaint provided sufficient factual information to plausibly suggest the existence of intentional discrimination, perpetrated by the Appellee. In short, the Appellant has set forth plausible facts, when taken together, clearly establish that she was protected by the applicable statutes, and she was subjected to intentional discrimination because of her protected characteristics.

The Appellant suffers from an auto-immune disorder, with additional underlying medical conditions, including renal insufficiency post nephrectomy, s/p cardiac surgery/ASD repair and pre-diabetes, which present severe life-threatening complications, upon her exposure to COVID-

---

practical matter, BODIE-JERNIGAN, had no other reasonable alternative, she obviously could not return to on-site work, given the incidence of COVID-19, and the presence of leaking roofs, which spawned airborne pathogens, in the workplace. For its conclusion that the Appellant made this "choice," the district court cites *Cotton* v. *Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006), but that case merely held that an adverse employment action must be evaluated according to an in "all of the circumstances test," an evaluation which is not inconsistent with the theory of the Appellant's case as set forth in the Second Amended Complaint. In other words, after being denied a reasonable accommodation, the Appellant could not return to on-site work, since she would have placed herself at risk of contracting a serious, life-threatening illness.

19, and or to other harmful airborne pathogens, in the workplace. Although the Appellee recognized the continuation of remote work for teachers with disabilities during the pandemic, and those with severe conditions were to be given priority for assignment for remote work, the Appellant's request for a continuation of her remote work assignment was summarily denied, without any reference to the applicable objective criteria, which had been approved by an Arbitrator. Moreover, there was no interactive process implemented with respect to the Appellant; and apparently no consideration was given to re-assigning the Appellant to work at the Appellee's on-going "Virtual School." Following the denial of her reasonable accommodation for remote work, in all of the circumstances, the Appellant had no other reasonable alternative to take an unpaid leave of absence for the remaining duration of the pandemic.

The function of the district court at the pleading stage is to assess the plausibility of the pleadings; however, here, the district court went beyond this initial and or preliminary evaluation function. The district court committed reversible error by erroneously citing case law, which foreclosed the Appellant's theory of the case.

An approach which references applicable and valid case law may be appropriate at the summary judgment stage of the proceedings; but certainly not at the pleading stage, where the low bar of plausibility is the legal standard, to assess the viability of a motion to dismiss. Therefore, the district court's decision should be vacated; and the Appellee should be promptly ordered to file an Answer to the sufficiently pleaded allegations of the Second Amended Complaint.

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that a total of 4,914 words have been used in the preparation of this Initial Brief for the Appellant.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Appellant
One Ten Tower
110 SE 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
Mark J. Berkowitz

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing was sent by the Court's electronic filing system, CFM/ECF, on this 18th day of September, 2024, to Hudson Gill, Esq., Johnson, Anselmo, *et al.,* 2455 E. Sunrise Blvd., Suite 1000, Ft. Lauderdale, Florida 33304.

/s/ Mark J. Berkowitz
Mark J. Berkowitz